344 January 24, 2024 No. 43

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON THOMAS WATT,
*Defendant-Appellant.*

Lane County Circuit Court
20CR25317; A178356

Debra K. Vogt, Judge.

Argued and submitted December 22, 2023.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Benjamin Gutman, Solicitor General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for one count of second-degree kidnapping, ORS 163.225 (Count 1); two counts of second-degree sodomy, ORS 163.395 (Counts 2 and 4); one count of second-degree rape, ORS 163.365 (Counts 3); one count of unlawful possession of methamphetamine, ORS 475.894 (Count 7); one count of unlawful delivery of methamphetamine to a minor, ORS 475.890 (Count 8); and one count of unlawful delivery of a Schedule II controlled substance to a minor, ORS 475.906 (Count 9).[1] In his first assignment of error, defendant contends that the trial court erred when it denied defendant's motion for judgment of acquittal (MJOA) on Count 1, the second-degree kidnapping charge. In his second assignment of error, defendant argues that the trial court plainly erred by imposing separate convictions and sentences for Counts 2 and 4, the second-degree sodomy charges.

*Defendant's First Assignment of Error.* Defendant was charged with second-degree kidnapping under ORS 163.225(1)(a), which provides that a person commits the crime of second-degree kidnapping if, "with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person[] [t]akes the person from one place to another." The liberty interest that ORS 163.225 "protects from interference is the interest in freedom of movement." *State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005).

Defendant argues that the trial court erred by denying his MJOA on the second-degree kidnapping charge, because "there was insufficient evidence that when defendant took [the victim] from one place to another, he intended to interfere with [the victim's] freedom of movement." Defendant argues that is so because "the child victim [went] willingly" and, therefore, the taking itself did not interfere with the victim's freedom of movement and thereby provides no basis for inferring defendant's intent to so interfere.[2]

---

[1] The state dismissed one count of second-degree rape (Count 5) and one count of second-degree sodomy (Count 6).

[2] That is true, as defendant sees it, even though the child did not consent to the taking within the meaning of the kidnapping statutes. ORS 163.215(1) ("'Without consent' means that the taking or confinement is accomplished by force, threat or deception, or, in the case of a person under 16 years of age or who

"We review the denial of an MJOA in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Anderson*, 329 Or App 754, 756, ___ P3d ___ (2023) (internal quotation marks omitted). "If the evidence is sufficient to support the jury's verdict against defendant, then we are required to affirm it." *Id.* The Supreme Court has explained that "in most cases the question whether the defendant intended to interfere substantially with the victim's liberty will present a question of fact for the jury." *Wolleat*, 338 Or at 478.

Here, the evidence is legally sufficient for the jury to have determined that defendant had the requisite intent to "interfere with [the victim's] freedom of movement" during the nonconsensual taking. That evidence would permit findings that, prior to the taking, defendant isolated the victim in the victim's parents' shed and supplied the victim with a sufficient amount of methamphetamine that the victim was "hallucinating really hard," and that defendant deceived the victim about the type of drug that defendant was supplying to the victim. It would also permit findings that, after the taking, defendant refused to bring the victim—who was without shoes—to his parents when asked to do so by the victim; told the victim to hide when someone was at the hotel room door; instructed the victim to remove the SIM card and battery from the victim's phone, because defendant believed that would prevent others from using the phone's location to determine the victim and defendant's location; and encouraged the victim to lie to the victim's parents about the victim and defendant's whereabouts. Further, it would permit a finding that it was not until around 36 hours after defendant had taken the victim away from the victim's parents' house that the police ultimately found the victim.

That evidence, among other evidence in the record, was legally sufficient for a jury to infer that defendant acted with the requisite intent during the taking. *See State v. Worth*, 274 Or App 1, 12, 360 P3d 536 (2015), *rev den*, 359

is otherwise incapable of giving consent, that the taking or confinement is accomplished without the consent of the lawful custodian of the person.").

Or 667 (2016) (noting that the requisite intent for kidnapping "may be demonstrated by evidence that the defendant moved the victim a substantial distance or confined the victim for a substantial period of time," as well as that evidence that a defendant "thwarted escape attempts, sought to minimize the risk of discovery, or moved the victim to a place that would better facilitate the defendant's control over the victim is probative of intent to substantially interfere with a victim's freedom of movement"); *see also State v. Mejia*, 348 Or 1, 12, 227 P3d 1139 (2010) (proof which "resembles * * * '[s]ecretly confining [a] person in a place where the person is not likely to be found,' ORS 163.225(1)(b)," can be probative of a defendant's intent when the defendant is charged under ORS 163.225(1)(a), kidnapping by "tak[ing] the person from one place to another").

Defendant argues that this case is like *State v. Bartlett*, 150 Or App 317, 946 P2d 309 (1997). But in *Bartlett*, "the state did not present any evidence that would have allowed the fact finder to infer that, if [the minor victim] had wanted to leave, defendant would have prevented her from doing so." *Id.* at 321. Here, in contrast, as noted, after the nonconsensual taking, the victim asked to be returned to his parents, and defendant did not comply with that request. And, unlike the defendant in *Bartlett*, who took the victim to a lake where they met a group of people, defendant here physically isolated the victim in a hotel room. Simply put, *Bartlett* is distinguishable and does not compel a conclusion that the evidence was legally insufficient for the jury to determine, beyond a reasonable doubt, that defendant had the requisite intent when he took the victim.

*Defendant's Second Assignment of Error.* Defendant next argues that the trial court plainly erred by imposing separate convictions and sentences for the second-degree sodomy charges in Counts 2 and 4.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Durant*, 327 Or App 363, 364, 535 P3d 808 (2023) (internal quotation marks omitted). "However, we have discretion to correct a 'plain' error." *Id.* (citing ORAP 5.45(1)). "An error is 'plain' when it is an error of law, the legal point is obvious and

not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences." *Id.*

Here, as charged, both Counts 2 and 4 required the jury to find that defendant committed the crime of second-degree sodomy when he "knowingly had oral sexual intercourse" with the victim. Count 2, however, was based on contact between defendant's mouth and the victim's genitals, while Count 4 was based on contact between defendant's genitals and the victim's mouth.

Defendant argues that those two counts should merge under ORS 161.067(3), because "there was no basis for a finding that the two sodomy violations were separated by a 'sufficient pause.'"[3] The state disagrees, noting that ORS 161.067(3) provides that "[e]ach method of engaging in oral or anal sexual intercourse as defined in ORS 163.305, *** shall constitute separate violations *** for purposes of determining the number of statutory violations."[4] As the state sees it, "because the sodomy convictions involved different methods of engaging in oral intercourse, they do not merge," or at least it is not obvious that they do.

In our view, it is not obvious that the two theories of second-degree sodomy that were litigated during defendant's trial do not involve separate "methods" of "engaging in oral or anal sexual intercourse" within the meaning of ORS 161.067(3). *See State v. Farmer*, 317 Or 220, 224, 856 P2d 623 (1993) (error was not "obvious" when unpreserved claim

_____

[3] ORS 161.067(3) provides:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in oral or anal sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

[4] ORS 163.305(3) provides that "[o]ral or anal sexual intercourse" means "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."

of error involved "open issue" that was "reasonably open to dispute"). Consequently, we cannot reach defendant's second assignment of error. *State v. Dominguez-Coronado*, 215 Or App 7, 12, 168 P3d 291 (2007), *rev den*, 345 Or 396 (2008) ("An unpreserved assignment of error is not reviewable by this court unless it constitutes plain error.").[5]

      Affirmed.

---

[5] On appeal, defendant also argues that "even if there was sufficient evidence of a sufficient pause" to prevent merger under ORS 161.067(3), defendant "had a right to a jury decision on that factual issue."

Our conclusion that any error was not plain because it is not "obvious" that the two theories of second-degree sodomy litigated during defendant's trial do not involve separate "methods" of engaging in "oral or anal sexual intercourse" for purposes of ORS 161.067(3) obviates the need to address that issue.